STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LOUIS ROMMEL, PLAINTIFF IN ERROR.

Submitted October 27, 1924—Decided February 6, 1925.

Crimes—Making False Corporation Statement—Insolvency as Defined in Corporation Act Not Insolvency in Ordinary Sense —Not Error to Charge "That 'Assets' is Property, Generally Regarded as Applicable to the Payment of Debts"—No Justification for Charge That the Court Erred in Assuming That Sufficient Proof Had Been Made of Guilt—Reliance in Some Degree was Had Upon Defendant's Statements.

On writ of error directed to the Essex County Court of Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiff in error, *Harrison P. Lindabury.*

For the defendant in error, *John O. Bigelow.*

PER CURIAM.

This case is before us on a writ of error directed to the Essex County Court of Quarter Sessions. The plaintiff in error, Louis Rommel, was indicted by the grand jury of Essex county at the April term, 1924, of the Essex Oyer and Terminer. Rommel was the president of a corporation organized under the laws of Delaware, known as the Puritan Guaranty Corporation. This corporation financed conditional sales contracts. The indictment was framed under a supplement to the Crimes act, approved March 28th, 1912. *Pamph. L., p.* 435. The indictment contained three counts.

The first count alleged that Rommel made or caused to be made a false statement of the financial condition of the Puritan Guaranty Corporation; that this statement showed that the total assets of the corporation were $565,551.25, and the surplus undivided profits and reserves, $59,385.25; that the company was insolvent and the statement false, and that the statement was published and circulated with intent to deceive and defraud the stockholders and creditors of the corporation.

The second count was quashed, so this need not be considered.

The third count of the indictment charged Rommel with circulating this false statement in order to procure, upon the faith thereof and for the benefit of himself and of said corporation, the payment of $2,000 by Vernon Palk to said corporation. This count made the same allegations respecting the statement as were contained in the first count of the indictment. At the trial, the case was submitted to the jury on both the first and third counts of the indictment. The jury rendered a verdict of guilty.

The case is before us on a strict bill of exceptions. There are fourteen assignments of error. These have been divided by counsel for the plaintiff in error into groups or divisions. The first group are assignments from one to seven, and deal with the refusal of the court to charge certain requests made by the defendant. The second group are assignments from eight to eleven, inclusive, and deal with exceptions taken to

the court's charge. The third group are assignments twelve and thirteen, which deal with the refusal of the court to direct a verdict for the defendant. The fourth division is assignment fourteen, which relates to the refusal of the court to strike out certain testimony on motion made on behalf of the defendant. Assignment 15 deals with the rulings of the court on evidence.

The first point argued is with reference to the refusal of the court to charge a request of the defendant relating to insolvency. The request submitted embodied the definition of insolvency contained in various opinions in this state, dealing with the meaning of insolvency under the provisions of the Corporation act upon an application for the appointment of a receiver. The purpose of submitting such a request to charge was that if this definition were to be applied to the case of the Puritan Guaranty Corporation, that corporation would not have been insolvent owing to certain long-term bonds outstanding. The trial judge did not charge these requests. He also does not appear to have defined insolvency. In his charge he took up the assets as reported in the statements and explained in the testimony, and then said: "Was this statement knowingly false? * * * You may ask yourselves * * * whether * * * these items * * * if bad in any respect, to what extent and in what respect they would reduce this item of $59,385.25 of surplus. * * * You may ask yourselves whether * * * when he made this statement there were facts within his knowledge of such character as would satisfy a man of ordinary intelligence and caution that the statement was false, and * * * if so, then you would have the right to draw the conclusion, the inference, that the defendant knew that this statement was false." The state argues that it was unnecessary to charge the definition of insolvency. If it appeared that the estimated liabilities of the company exceeded the estimated assets, it was insolvent. The state then endeavors to demonstrate that the liabilities did exceed the assets and that most of the assets were imaginary and inflated. The indictment charged, in the first place, in effect,

that the assets of the corporation were not as reported, and, in the second place, that the company was insolvent. If either of these charges were supported, the state contends that the crime was made out if knowledge were shown that the one responsible for the statement intended to procure money by it. If this position of the state is correct, then the defendant was not harmed, in any case, by the failure to charge the request submitted. The statute under which Rommel was indicted deals with the making and circulation of a false statement, in writing, respecting the financial condition of any person, firm or corporation in which the person making the statement is interested. It does not mention the question of the insolvency of the corporation. The allegations of insolvency were therefore unnecessary in the indictment. We think that it was unnecessary, under this aspect of the case, to charge the requests made in behalf of the defendant on the subject of insolvency. Moreover, in our opinion, the requests should not have been charged as the insolvency necessary to obtain the appointment of a receiver arises under the special provisions of the Corporation act upon this subject. Our decisions relating to this character of insolvency are based upon the statute, and do not treat the term insolvency in its ordinary sense. We think that insolvency in the ordinary sense was what was charged in the indictment.

The second point argued by the plaintiff in error is that the court erred in refusing to charge the defendant's sixteenth request. The purpose of this request was to have the statement in writing alleged to have been circulated confined to *Exhibit S-4*. *S-4* differed from *Exhibits S-2* and *S-3*, in that under the word "mortgages" there appeared the word "unpledged." There was also an explanatory statement printed on *S-4*. We think the request properly refused because it was a question for the jury as to whether or not *S-2* and *S-3*, offered in evidence, were not statements circulated in the same manner as *S-4*. If *S-2* and *S-3* were circulated, and there was evidence of their circulation, it would have been improper to confine the question of circula-

tion of the false statement entirely to the circulation of *Exhibit S*-4.

The third point argued, deals with a portion of the charge of the trial judge which the plaintiff in error claims was erroneous. The point made is that the jury might have been deceived by the broadness of the language used by the trial judge which might be construed to include something not contained in the indictment. We think it is unnecessary to consider this point at length, for the reason that in the supplement to the state of the case it appears that after the jury retired the court recalled the jury and expressly confined them in the decision of the case to what was charged in the indictment.

The fourth point argued deals with another excerpt from the court's charge. In this part of the charge the trial court directed the attention of the jury to the fact that the statement set up assets of $565,551.25, which, the indictment says, is false, &c. In making these comments the trial judge defined assets as being "property generally regarded as applicable to the payment of debts." It is contended that this was error. We see no error in this statement.

The fifth point argued by the plaintiff in error is the eleventh assignment of error, which deals with that portion of the court's charge in which the court commented upon the contention of the prosecutor with reference to the purpose of the defendant in disseminating the statements. It is contended that this comment was so worded that the jury might infer that it was a sufficient proof of the charge made. We can see nothing in this contention. The eleventh assignment of error upon which it is based seems to us too broad to raise the contention made.

The sixth point argued is that the trial judge erred in refusing to direct a verdict for the defendant on the first count. We think the facts fully justified the submission of the evidence produced under the first count to the jury.

The eighth point argued is the refusal of the trial judge to direct a verdict for the defendant on the third count. In support of this contention the plaintiff in error argues that

the Vernon Palk referred to therein testified that he did not rely to any extent on Rommel's statements as he preferred to trust an associate of Rommel by the name of Blackmore. Notwithstanding the testimony of Palk, we think that he did rely in some measure on the statement in question. This is sufficient. The state argues that if there had been a verdict on the third count, the verdict rendered by the jury was a general one and would hold as to the first count. The state is supported in this contention by the case of *State* v. *Huggins*, 84 *N. J. L.* 254.

The eighth point argued in behalf of the plaintiff in error deals with the motion made by the defendant to strike out certain testimony of a witness by the name of Mahan. Mahan was a bookkeeper in the employ of the Merlon Corporation, which was allied with the Puritan Guaranty Corporation. Mahan was directed by Rommel to gather from the books of the Merlon Corporation certain data for the statement circulated. Mahan testified as to the value of a certain merchandise inventory of the Merlon Corporation. He had not made this inventory. A motion was then made to strike out this testimony. This motion was denied. We think that it was properly denied. In the first place, the motion was made after the testimony had been admitted, and was therefore too late. In the second place, if it could be classed as hearsay testimony, it was hearsay testimony furnished by the defendant himself. In this aspect of the case it was competent.

The ninth point relates to the admission in evidence of the examination of Rommel before Mr. Richard Stockton, a receiver appointed by the Court of Chancery for the Puritan Guaranty Corporation. The reading of this testimony was not objected to in its entirety. After it was read objections were made to certain portions of it. It is now contended that by refusing to strike out the portions objected to that Rommel was forced to give testimony which incriminated himself. This argument is not appealing to us because the time to object to the testimony was when it was taken by the receiver. We further think that the objections made in the present case came too late.

14

After a review of the entire case we have reached the conclusion that the judgment of conviction should be affirmed. The judgment of conviction is accordingly affirmed.